UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RICHARD FITZGERALD,**<br><br>**Plaintiff,**<br><br>v.<br><br>**CITY OF FRESNO; THOMAS ESQUEDA, City Manager, PACO BALDERRAMA, Chief of Police for the City of Fresno, JERRY DYER, Mayor of Fresno; and DOES 1 through 20, inclusive,**<br><br>**Defendants.** | CASE NO. 1:21-CV-01409-AWI-SAB<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>(Doc. No. 6) |

This case involves an employment dispute between Plaintiff Richard Fitzgerald and Defendants City of Fresno, Jerry Dyer, Thomas Esqueda, and Paco Balderrama. Following his removal from employment, Plaintiff initiated this lawsuit asserting state and federal law claims in state court. Defendants removed the matter to this Court on the basis of federal question jurisdiction. Pending before the Court is Defendants' Motion to Dismiss and to Strike Portions of the Complaint (Doc. No. 6). Defendants seek dismissal of four causes of action and all official capacity claims against the individual Defendants. For the following reasons, the Court will grant in part and deny in part Defendants' motion.

## **BACKGROUND**[1]

Plaintiff Richard Fitzgerald was a police officer employed by the City of Fresno in the Fresno Police Department until he was served with an Order of Immediate Termination on April 9, 2021. Doc. No. 1 at 7, ¶ 9. Prior to his termination, Plaintiff was not provided an opportunity to review all materials on which the termination was based nor a pre-termination hearing to respond to the charges that led to his termination. Id. at 7-8, ¶ 10. Instead, the City proceeded with the termination pursuant to Fresno Municipal Code Section 3-280(d), which provides:

---

[1] This section summarizes allegations set forth in the Complaint. See Doc. No. 1. Additionally, as explained in further detail later in this Order, the Court takes judicial notice of the exhibits submitted with Defendants' motion to dismiss and will reference them in this section. See Doc. No. 6-2.

> In those extraordinary circumstances, wherein the appointing authority determines immediate disciplinary action is necessary against an employee having permanent status as a result of accusations against such employee involving misappropriation of public funds or property, drug addition, mistreatment of persons in the custody of the employee, physical assault upon another employee or a member of the public, or action which would constitute a felony or misdemeanor involving moral turpitude, the appointing authority may proceed to impose disciplinary action in accordance with the provisions of Sections 3-282 through 3-290 of the Code without compliance with the procedure set forth in this section.

Id. at 8, ¶ 11. The City based its decision for termination on the following alleged conduct: (1) Plaintiff attended a protest in the presence of persons believed to be members of the Proud Boys; (2) Plaintiff displayed Instagram pictures of himself wearing the costume of the comic book character "The Punisher" while holding an AR-style rifle with a caption that said "(s)hit is a lot easier when you can kill people"; (3) Plaintiff admitted he was a member of the "Proud Boys" organization; (4) Plaintiff participated in a protest in Sacramento, California on November 21, 2020; (5) Plaintiff participated in a conspiracy to physically remove a flag from a counter-demonstrator; (6) Plaintiff proclaimed on his deleted Instagram account that "(s)hit is a lot easier when you can kill people"; (7) Plaintiff displayed "memes" that alluded to his alleged "advocacy of violence"; and (8) Plaintiff had a "tattoo violation." Id. at 8-9, ¶¶ 13-15.

Before Plaintiff's termination, several major news outlets, including the Fresno Bee, Associated Press, Daily Beast, Yahoo News, U.S. News, Fox News, and USA Today, had published articles on or around March 15, 2021 regarding the above alleged conduct. Doc. No. 6-2 at Exs. I-O. In several of the articles, Defendant Balderrama is quoted as saying, "Any allegations of actions unbecoming of a police officer or the affiliation with any alleged criminal or hate group will always be investigated and addressed. Fair and impartial policing are extremely important in our society. There is no place in our police ranks for any biased, racists, or anti-Semantic views." Doc. No. 6-2 at Exs. I-K, M-O. Additionally, several of the articles quote Defendant Dyer for his statement that "[a]s the mayor of this city, I will not tolerate any city of Fresno employee belonging to organizations that promote views of supremacy, racism or criminal conduct. This matter is under investigation and appropriate action will be taken to address any misconduct."

2

Doc. No. 6-2 at Exs. I-J, M-N. Furthermore, the Fresno Police Officers Association is quoted as stating "racism, discrimination, and criminal conduct among our ranks is absolutely intolerable." Doc. No. 6-2 at Exs. K and N.

On March 17, 2021, District Attorney for the County of Fresno, Lisa Smittcamp, issued the following news release:

> Upon learning of the allegations that Fresno Police Department Officer Richard "Rick" Fitzgerald was recently a member of the Proud Boys, an organization that the Southern Poverty Law Center has designated as a "hate group," the Fresno County District Attorney's Office has proactively taken steps to identify all cases involving Officer Fitzgerald.
>
> It's important that every citizen in the County of Fresno trust that members of our law enforcement community will behave equitably and free from biases when investigating, evaluating and prosecuting cases. To the extent that Officer Fitzgerald's alleged affiliations, publicly available statements, social media posts or observed conduct undermine that public trust is of grave concern. I am committed to working with the Fresno Police Department, the Fresno County Public Defender, all members of the criminal defense bar, and the courts in addressing these concerns and the impact it may have on any cases.
>
> As has been made public elsewhere, the Fresno Police Department has placed Officer Fitzgerald on administrative leave pending a departmental "internal affairs" investigation. Such investigations do not involve the Fresno County District Attorney's Office. Outcomes of internal affairs investigations are generally subject to privacy rights established by statute. Because the law affords this confidentiality, findings are not automatically shared with either party to a criminal case. However, once an investigation is complete, legal process does allow parties to a criminal case to seek information, with agreement and input from the court, about the investigation and any findings. It is anticipated that this procedure will be utilized as appropriate in matters involving Officer Fitzgerald.

Id. at 9-10, ¶ 17.

On April 10, 2021, one day after Plaintiff's termination, Defendant Dyer published the following statement on his Mayor of Fresno Twitter page:

> After discussions with Chief Balderrama regarding the ongoing internal investigation of Officer Rick Fitzgerald, who is accused of participating with the Proud Boys extremist group, it is clear to me that there were egregious violations of department policy.
>
> I am pleased that Officer Fitzgerald will no longer be serving as a police officer with the City of Fresno. As Mayor, I want to reiterate to the community that I will not tolerate any form of racism displayed by City of Fresno employees.

Id. at 11, ¶ 19.

3

1  The Fresno Municipal Code and the Memorandum of Understanding between the City of
2 Fresno and the Fresno Police Officers Association (Non-Supervisory Police – Unit 4) allowed
3 Plaintiff to appeal his termination by (1) filing an appeal before the Civil Service Board, (2)
4 requesting a hearing before a hearing officer who would then make a recommendation to the Civil
5 Service Board, or (3) filing for binding arbitration. Doc. No. 6-2 at Exs. A-E. On April 19, 2021,
6 Plaintiff elected to request a hearing before a hearing officer. Doc. No. 6-2 at Ex. D.

7  On August 2, 2021, Plaintiff filed his Complaint in the Fresno County Superior Court
8 alleging state and federal law violations against the City of Fresno, City Manager Thomas
9 Esqueda, Fresno City Chief of Police Paco Balderrama, and Fresno Mayor Jerry Dyer. On
10 September 22, 2021, Defendants removed the matter to this Court.

11 **LEGAL STANDARD**

12  Under Federal Rule of Civil Procedure 12(b)(6), a cause of action may be dismissed where
13 a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).
14 Dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the
15 absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar,
16 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116,
17 1121−22 (9th Cir. 2008). To survive a Rule 12(b)(6) motion for failure to allege sufficient facts, a
18 complaint must include a "short and plain statement of the claim showing that the pleader is
19 entitled to relief." Fed. R. Civ. P. 8(a)(2). Compliance with this rule ensures that the defendant has
20 "fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v.
21 Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (internal
22 quotation marks omitted). Under this standard, a complaint must contain sufficient factual matter
23 to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
24 (quoting Twombly, 550 U.S. at 570) (internal quotation marks omitted). A claim has facial
25 plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable
26 inference that the defendant is liable for the alleged misconduct. Id. at 663 (citation omitted).

27  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as
28 true and construed in the light most favorable to the nonmoving party. See Mollett v. Netflix, Inc.,

795 F.3d 1062, 1065 (9th Cir. 2015); Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008). But the Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoted source omitted). Complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678; Johnson v. Fed. Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). Rather, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

If a motion to dismiss is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Henry A. v Willden, 678 F.3d 991, 1005 (9th Cir. 2012) (quoted source omitted).

## REQUEST FOR JUDICIAL NOTICE

Defendants ask the Court to take judicial notice of various documents for purposes of resolving its motion to dismiss. See Doc. No. 6-2. "[A]s a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). However, a court may consider matters of judicial notice when ruling on a motion to dismiss without converting the motion into a motion for summary judgment. Id. Judicial notice under Federal Rule of Evidence 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). A court may, therefore, "'take judicial notice of matters of public record outside the pleadings' and consider them for purposes of [a] motion to dismiss." Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

5

The fifteen exhibits for which Defendants seek judicial notice are: (1) Fresno Municipal Code Sections 3-280 to 3-286 (Doc. No. 6-2, Ex A.); (2) Fresno City Charter, Sections 400 and 904 (Doc. No. 6-2, Ex B.); (3) Civil Service Board Rules and Regulations, accessible on the City's website at www.fresno.gov (Doc. No. 6-2, Ex C.); (4) Plaintiff's appeal filed with the City on or about April 19, 2021 (Doc. No. 6-2, Ex D.); (5) Excerpts of Memorandum of Understanding between the City of Fresno and the Fresno Police Officers Association (Non-Supervisory Police – Unit 4), accessible on the City's website at www.fresno.gov (Doc. No. 6-2, Ex E.); (6) Plaintiff's Government claim dated May 11, 2021 (Doc. No. 6-2, Ex F.); (7) Plaintiff's Amended Government claim dated May 26, 2021 (Doc. No. 6-2, Ex G.); (8) Plaintiff's Government claim dated June 22, 2021 (Doc. No. 6-2, Ex H.); (9) Fresno Bee article dated March 14, 2021 (Doc. No. 6-2, Ex I.); (10) Associated Press article dated March 15, 2021 (Doc. No. 6-2, Ex J.); (11) Article by the Daily Beast dated March 15, 2021 (Doc. No. 6-2, Ex K.); (12) Yahoo News article dated March 15, 2021 (Doc. No. 6-2, Ex L.); (13) U.S. News article dated March 15, 2021 (Doc. No. 6-2, Ex M.); (14) Fox News article dated March 16, 2021 (Doc. No. 6-2, Ex N.); and (15) USA Today article dated March 16, 2021 (Doc. No. 6-2, Ex O.).

Plaintiff does not object to the Court taking judicial notice of these fifteen exhibits. Upon review and in light of Plaintiff's non-opposition, the Court finds that these exhibits consist of information that is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[2] Fed. R. Evid. 201(b)(1)-(2). Accordingly, the Court will take judicial notice of these exhibits.

---

[2] The Fresno Municipal Code and Fresno City Charter are proper matters for judicial notice. Cal. River Watch v. City of Vacaville, 2017 U.S. Dist. LEXIS 142560, *9 (E.D. Cal. Aug. 30, 2017); see United States ex rel. Modglin v. DJO Glob. Inc., 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014) ("Under Rule 201, the court can take judicial notice of [p]ublic records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies.") (internal citations omitted). Furthermore, matters subject to judicial notice include records of state agencies, City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute."); memorandums of understanding between state administrative agencies, DiRuzza v. Cty. of Tehama, 206 F.3d 1304, 1310 n.3 (9th Cir. 2000); claims to the government and notices of rejection, Rogers v. Macias, 2019 U.S. Dist. LEXIS 171206, *2 n.2 (C.D. Cal. Apr. 25, 2019); and newspaper articles, Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010).

**DISCUSSION**

**I.  Defendants' Motion to Strike**

Defendants move to strike and/or dismiss all claims for Fifth Amendment violations against the City of Fresno on the ground that "the Fifth Amendment Due Process Clause only protects against acts of the federal government, and has no application to municipalities." Doc. No. 6-1 at 15:8-9. Additionally, Defendants move to strike and/or dismiss all official capacity claims against the individual Defendants on the ground that these claims "are redundant and amount to mere surplusage" given that the City of Fresno is already a named Defendant. Doc. No. 6-1 at 32:16-18.

Regarding the Fifth Amendment claims, Plaintiff agrees to "not object to striking any reference to the Fifth Amendment and replacing such reference with 'Fourteenth Amendment' so long as such replacement is not redundant to an allegation of the Fourteenth Amendment." Doc. No. 7 at 11:13-15. Regarding the official capacity claims against the individual Defendants, Plaintiff contends that "[t]hese allegations are not 'official capacity' allegations, rather they allege that the individual Defendants 'personally participated' in the deprivation of Fitzgerald's rights" and, therefore, their acts "were the kinds of acts that impose liability on the municipality." Doc. No. 7 at 27:15-17, 25-26.

The Court may strike from "any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior to trial. A.V. v. Panama-Buena Vista Union Sch. Dist., 292 F. Supp. 3d 992, 999 (E.D. Cal. 2017) (citing Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983)). "Immaterial matter" is that which has no essential or important relationship to the claim for relief or the defenses being pleaded. Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974 (9th Cir. 2010). "Impertinent matter" consists of statements that do not pertain, and are not necessary, to the issues in question. Id.

In light of the parties' agreement to strike all claims for Fifth Amendment violations against Defendants, the Court will strike from the Complaint all references to the Fifth

Amendment in the first, second, third, and seventh causes of action. With respect to Defendants' motion to strike and/or dismiss all official capacity claims against the individual Defendants, the Court will grant the motion and dismiss the official capacity claims without leave to amend because they are redundant. See Center for Bio-Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008) ("When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant."); Estate of Contreras v. Cty. of Glenn, 725 F. Supp. 2d 1157, 1159-60 (E.D. Cal. 2010); Rivas v. Cal. Franchise Tax Bd., 619 F. Supp. 2d 994, 1004 (E.D. Cal. 2008). However, this ruling does not affect the suit against these individual Defendants in their individual capacities. See Estate of Contreras, 725 F. Supp. 2d at 1160 (dismissing §1983 claims against individual defendants in their official capacities but not in their individual capacities); see also Doc. No. 8 at 12:25-26 ("City Defendants do not dispute, if properly pled, that plaintiff should be allowed to pursue claims against the Individual Defendants in their individual capacities.").

**II.   Defendants' Motion to Dismiss**

The remaining claims Defendants move to dismiss are the Complaint's first, sixth, and seventh causes of action. Plaintiff agreed in his opposition brief that the first cause of action for declaratory relief is superfluous and should be stricken. Doc. No. 7 at 18:16-17. Accordingly, the Court will dismiss the Complaint's first cause of action and review the sixth and seventh causes of action in turn.

   **A. Libel Claim**

The Complaint's sixth cause of action asserts a libel claim against Defendants Dyer and the City of Fresno. The claim alleges that Dyer, acting on behalf of the City as Mayor of Fresno, intentionally published the April 10, 2021 statement on Twitter that he knew was false and that caused Plaintiff both pecuniary and non-pecuniary damages. Doc. No. 1 at 19-20. Defendants contend that this claim should be dismissed on two grounds:[3] first, the statement was privileged under California Civil Code Section 47(a) and, second, the statement was an opinion based on

---

[3] Defendants also claimed that the libel claim should be dismissed because the Complaint lacked allegations supporting actual malice. Doc. No. 6-1 at 28-30. However, Defendants later withdrew this ground for dismissal in their reply brief. Doc. No. 8 at 10:26-28.

8

disclosed facts. Doc. No. 6-1 at 25-28, 30-31.

1. Privilege Under California Civil Code Section 47(a)

*Defendants' Arguments*

Defendants argue that Dyer's statement falls under the absolute privilege afforded by Civil Code Section 47(a) because he was "clearly acting in his capacity as Mayor in sending out the twitter message as to the City's position on racism." Doc. No. 6-1 at 31. According to Defendants, a public official's duties include the duty to keep the public informed of his or her management of the public business.[4] Given that the public has an interest in its police force, Defendants contend that Dyer acted in accordance with this duty when he exercised discretion in publishing his statement on Twitter against any form of racism in City government in response to public criticism.

*Plaintiff's Arguments*

Plaintiff asserts that Dyer's statement was not privileged in two ways. First, Plaintiff contends that the statement was not a proper discharge of an official duty because it disclosed the results of an internal affairs investigation and personnel decision that were strictly confidential under Penal Code sections 832.7-8. According to Plaintiff, Dyer negated the application of the "official duty" privilege when he breached his duty to preserve the confidentiality of Plaintiff's personal records and information obtained from the internal investigation. Second, Plaintiff argues that the privilege does not apply because his termination and Dyer's statement were not matters of "policy making"; instead, they were ministerial acts that merely carried out settled policy.

*Legal Standards*

California Civil Code Section 47(a) confers privileged status upon any statement made by a public official "in the proper discharge of an official duty." Cal. Civ. Code § 47(a); see McQuirk v. Donnelley, 189 F.3d 793, 800-01 (9th Cir. 1999); Slaughter v. Friedman, 32 Cal. 3d 149, 155 (1982). The privilege protects any statement by a public official, so long as it is made (a) while

---

[4] Defendants reference Section 400 of the Fresno City Charter which states that the Mayor "shall provide community leadership" and "shall be the Chief Executive Officer of the City, responsible for providing leadership and taking issues to the people and marshaling public interest in and support for municipal activity. The Mayor shall be responsible to the People of Fresno for the proper and efficient administration of all affairs of the City." Doc. No. 6-1 at 30.

9

exercising policy-making functions, and (b) within the scope of his or her official duties. See McQuirk, 189 F.3d at 801; Sanborn v. Chronicle Publ'g Co., 18 Cal. 3d 406, 412-13, (1976); Maranatha Corr., LLC v. Dep't of Corr. & Rehab., 158 Cal. App. 4th 1075, 1087 (2008). To be engaged in the exercise of a policymaking function, the official must reach a basic policy decision, as distinct from an operational decision, after balancing risks and advantages. McQuirk, 189 F.3d at 801; Neary v. Regents of Univ. of Cal., 185 Cal. App. 3d 1136, 1142 (1986). Because a public official's duty includes the duty to keep the public informed of his or her management of the public business, press releases, press conferences and other public statements by such officials sometimes can be covered by the "official duty" privilege. See Kilgore v. Younger, 30 Cal. 3d 770, 779-80 (1982); Maranatha Corr., LLC v. Dep't of Corr. & Rehab., 158 Cal. App. 4th 1075, 1089 (2008); see also Montgomery v. Dyer, 2018 U.S. Dist. LEXIS 205666, *8 (E.D. Cal. Dec. 5, 2018). The defendant bears the burden of proving that the alleged defamatory statement was made on a privileged occasion. SDV/ACCI, Inc. v. AT&T Corp., 522 F.3d 955, 961 (9th Cir. 2008) (citing Kashian v. Harriman, 98 Cal. App. 4th 892, 915 (2002)); Bikkina v. Mahadevan, 241 Cal. App. 4th 70, 90 (2015).

   A public official cannot be said to be properly discharging his duties when he violates a statute by publishing confidential material. Kilgore, 30 Cal. 3d at 793. Since Civil Code section 47(a) relates to privileged publications, unlawful publications are not privileged. Id. If the public official knew or should have known that the publication of confidential material violated clear constitutional or statutory law when he published it, then he could not be said to be "properly discharging his official duties." Id.

   Penal Code section 832.7 is one such statute that protects the confidentiality of police officer personnel records. See Association for L.A. Deputy Sheriffs v. Superior Court, 8 Cal. 5th 28, 44-47 (2019). In relevant part, section 832.7(a) provides that certain "[p]eace officer or custodial officer' records and 'information obtained from these records[] are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code.'" Towner v. Cty. of Ventura, 63 Cal. App. 5th 761, 771-72 (2021) (citing Copley Press, Inc. v. Superior Court, 39 Cal.4th 1272, 1283 (2006)). This provision

does not merely restrict disclosure in criminal and civil proceedings; it creates a generally applicable condition of confidentiality and recognizes an exception for "discovery pursuant to" certain portions of the Evidence Code. L.A. Deputy Sheriffs, 8 Cal. 5th at 44. Section 832.7(a) applies to (1) "personnel records of peace officers and custodial officers" including but not limited to records relating to "[e]mployee … discipline"; (2) "records maintained by any state or local agency pursuant to Section 832.5," which "requires '[e]ach department or agency in [California] that employs peace officers [to] establish a procedure to investigate complaints by members of the public against the personnel of these departments or agencies'"; and (3) "information obtained from" the prior two types of records. Id. at 44-45. Notifying an outside agency "that a deputy has an administratively founded allegation of misconduct … cannot be characterized as anything other than disclosing information obtained from the peace officer's personnel file." Id. at 39.

*Discussion*

After review, it appears that section 832.7(a) applies to the "information obtained from" the ongoing internal investigation of Plaintiff at the time Dyer published his statement on April 10, 2021.[5] Dyer's statement that "it is clear to me that there were egregious violations of department policy" and that Plaintiff "will no longer be serving as a police officer with the City of Fresno" "cannot be characterized as anything other than disclosing information obtained from the peace officer's personnel file." L.A. Deputy Sheriffs, 8 Cal. 5th at 39.

It also appears that Dyer violated this statute by releasing his findings that Plaintiff committed "egregious violations of department policy" obtained from this "ongoing internal investigation." See Towner, 63 Cal. App. 5th at 772 (finding defendants' public disclosure of plaintiff's confidential personal records violated section 832.7 and was illegal); see also Neary, 185 Cal. App. 3d at 1144-45 (finding that absolute privilege under section 47(a) was not available

---

[5] Fresno County District Attorney Lisa Smittcamp's statement on March 17, 2021 agrees that "[o]utcomes of internal affairs investigations [of police officers] are generally subject to privacy rights established by statute." Doc. No. 1 at 9-10. Her statement also acknowledges that "[b]ecause the law affords this confidentiality, findings are not automatically shared with either party to a criminal case. However, once an investigation is complete, legal process does allow parties to a criminal case to seek information, with agreement and input from the court, about the investigation and any findings." Id. at 10. Based on the current record before the Court, it is unclear whether Dyer had proper authority to publicly disclose the outcome of the internal investigation of Plaintiff. Plaintiff claims that Dyer did not have such authority, and Defendants do not dispute this claim in reply. For purposes of this motion, the Court will assume that Dyer lacked authority to disclose. See Mollett, 795 F.3d at 1065.

1  in part because defendants disclosed a confidential report that should not have been disclosed
2  pursuant to defendants' company policy). Defendants do not dispute Plaintiff's contention that
3  Dyer violated section 832.7, and there is no evidence in the current record indicating that one of
4  the statute's exceptions applies. Accordingly, because Defendants have not demonstrated that
5  Dyer properly discharged his duties when he published his statement on Twitter, the Court finds
6  that dismissal under California Civil Code Section 47(a) is inappropriate. Kilgore, 30 Cal. 3d at
7  793.

        2. Opinion or Fact

  *Defendants' Arguments*

10   Defendants argue that the Complaint fails to state a libel claim because Dyer's Twitter post
11 expressed an opinion as to racism based on disclosed facts which is not actionable under libel law.
12 According to Defendants, calling someone a racist is a mere expression of opinion that cannot be
13 proved true or false, and many courts have held that "indicating that someone is racist or belongs
14 to a racist organization is not actionable." Doc. No. 6-1 at 27. While assertions of fact can be
15 proved true or false, Defendants contend that Dyer's statement was not sufficiently factual to be
16 susceptible of being proved true or false.

  *Plaintiff's Arguments*

18   Plaintiff contends that Defendants' motion should be denied because the gist of Dyer's
19 statement was an assertion of fact, not an opinion, and Dyer further misrepresented or failed to
20 disclose the factual basis of his statement. Dyer's statement, according to Plaintiff, did not merely
21 accuse Plaintiff of being racist in the abstract, but rather accused Plaintiff of being racist in a
22 concrete context, namely, that he was fired because he was a racist. Plaintiff asserts that this
23 concrete context made Dyer's statement sufficiently factual and falsifiable to be actionable under
24 Libel law.

  *Legal Standard*

26   Under California law, "[l]ibel is a false and unprivileged publication . . . which exposes
27 any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or
28 avoided, or which has a tendency to injure him in his occupation." Baker v. L.A. Herald Exam'r,

42 Cal. 3d 254, 259 (1986) (citing Cal. Civ. Code § 45); see Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1167-68 (9th Cir. 2009). To state a claim for libel, the plaintiff must establish "the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 826 (9th Cir. 2008); Taus v. Loftus, 40 Cal. 4th 683, 720 (2007) (citing Cal. Civ. Code § 45).

A statement of opinion "cannot be false and is outside the meaning of libel." Reese v. Barton Healthcare Sys., 693 F. Supp. 2d 1170, 1190 (E.D. Cal. 2010) (citing Tschirky v. Superior Court, 124 Cal. App. 3d 534, 539 (1981)). However, a statement of opinion that implies a false assertion of fact is actionable. Edward v. Ellis, 72 Cal. App. 5th 780, 790 (2021); Obsidian Fin. Grp., LLC v. Cox, 740 F.3d 1284, 1293 (9th Cir. 2014). Thus, the threshold question is not whether a statement might be labeled "opinion," but whether a reasonable factfinder could conclude that the statement implies a provably false assertion of fact. Cochran v. NYP Holdings, Inc., 210 F.3d 1036, 1038 (9th Cir. 2000) (citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 19 (1990)); Jensen v. Hewlett-Packard Co., 14 Cal. App. 4th 958, 970 (1993). The issue of whether an allegedly defamatory statement constitutes fact or opinion is a question of law for the court to decide. Baker, 42 Cal. 3d at 260; Rodriguez v. Panayiotou, 314 F.3d 979, 985 (9th Cir. 2002). If the court concludes the statement could reasonably be construed as either fact or opinion, the issue should be resolved by a jury. Slaughter, 32 Cal. 3d at 154; Rodriguez, 314 F.3d at 985-86.

To determine whether a statement implies a factual assertion, courts examine the totality of the circumstances in which it was made. Baker, 42 Cal. 3d at 260; Underwager v. Channel 9 Austl., 69 F.3d 361, 366 (9th Cir. 1995). "First, [courts] look at the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work." Steam Press Holdings, Inc. v. Haw. Teamsters & Allied Workers Union, Local 996, 302 F.3d 998, 1005 (9th Cir. 2002). "Next [courts] turn to the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation." Id. at 1005-06. "Finally, [courts] inquire whether the statement itself is sufficiently factual to be susceptible of being

13

proved true or false." Id. at 1006; see also Franklin v. Dynamic Details, Inc., 116 Cal. App. 4th 375, 385 (2004) (citing Baker, 42 Cal. 3d at 260-61) ("Under the totality of the circumstances test, '[f]irst, the language of the statement is examined. For words to be defamatory, they must be understood in a defamatory sense. . . Next, the context in which the statement was made must be considered."). In applying this test, the "court must place itself in the position of the . . . reader, and determine the sense of meaning of the statement according to its natural and popular construction" and the "natural and probable effect [it would have] upon the mind of the average reader." Baker, 42 Cal. 3d at 260; Rodriguez, 314 F.3d at 986.

*Discussion*

In the context of this motion, the "totality of the circumstances" test indicates that Dyer's April 10, 2021 statement expressed an opinion that implied an assertion of fact. First, the "general tenor of the entire work, the subject of the statements, the setting, and the format of the work" support the conclusion that a reasonable viewer could interpret Dyer's statement as implying a factual assertion; namely, that Plaintiff was fired for committing multiple violations of department policy, one of which was displaying racism. Steam Press Holdings, Inc., 302 F.3d at 1005. Dyer's statement was earnest and serious in tone, specified that its subject matter was the "ongoing internal investigation" of Plaintiff who was "accused of participating with the Proud Boys extremist group," and Dyer represented himself as having first-hand discussions with Balderrama regarding the findings in the investigation. See ZL Techs., Inc. v. Does 1–7, 13 Cal. App. 5th 603, 624 (2017) ("[I]f a statement is 'factually specific,' 'earnest'[], or 'serious' in tone, or the speaker represents himself as 'unbiased,' 'having specialized' or 'first-hand experience,' or 'hav[ing] personally witnessed … abhorrent behavior'[], this may signal the opposite [of opinion], rendering the statement actionable."). Being on Twitter also does not mean that Dyer's statement is presumptively opinion because Twitter "also is an important source for facts," bulletins, and alerts. Unsworth v. Musk, 2019 U.S. Dist. LEXIS 167626, *11 (C.D. Cal. May 10, 2019) (citing report that "[n]early 9 in 10 Twitter users in the study (86%) say they use Twitter for news")); see also Bently Res. LP v. Papaliolios, 218 Cal. App. 4th 418, 431 (2013) ("[W]here the [internet] poster claims his posts are 'Research Reports' or 'bulletins' or 'alerts,' [the posts] may indeed be

14

reasonably perceived as containing actionable assertions of fact."). Taken together, the tenor, subject matter, setting, and format of Dyer's statement could lead a reasonable viewer to understand the statement as implying an assertion of fact.

Second, the "extent of figurative or hyperbolic language used and the reasonable expectations of [Dyer's] audience" do not negate the impression that Dyer's statement implied an assertion of fact. Steam Press Holdings, Inc., 302 F.3d at 1005-06. Arguably, the only hyperbolic word used is "egregious," which appears in Dyer's statement that "there were egregious violations of department policy." However, when this word is considered in the context of Plaintiff's immediate termination pursuant to the "extraordinary circumstances" provision of Fresno Municipal Code Section 3-280, Doc. No. 1 at 8, ¶ 11., a reasonable viewer may view the word as an accurate reflection of the degree of violation that necessitated Plaintiff's prompt removal. Furthermore, it is undisputed that during the weeks leading up to April 10, 2021, numerous major news outlets published articles highlighting Plaintiff's ties to the Proud Boys and Defendants' efforts to investigate and take appropriate action. See Doc. No. 6-2 at Exs. I-O. Thus, under this media spotlight, it is reasonable that a viewer would expect Defendants to provide serious, professional, and accurate updates regarding the investigation. Accordingly, the context and content of Dyer's statement lend further weight to the conclusion that Dyer's statement implied an assertion of provable fact.

Finally, the Court finds that Dyer's statement is "susceptible of being proved true or false" because the implication that Plaintiff was fired for committing multiple violations of department policy, including displaying racism, is capable of verification. Steam Press Holdings, Inc., 302 F.3d at 1006. Either Plaintiff was fired for committing these violations or he was not. While Defendants are correct in asserting that "indicating that someone is a racist" is generally not actionable, a reasonable viewer would not interpret Dyer's statement as merely accusing Plaintiff of being "racist" in some abstract sense. Overhill Farms, Inc. v. Lopez, 190 Cal. App. 4th 1248, 1262 (2010) ("[D]efendants did not merely accuse [plaintiff] of being 'racist' in some abstract sense. The press release contains language which expressly accuses it of engaging in racist *firings* . . . .") (emphasis in original). Instead, Dyer's statement implies that Plaintiff was *fired* for violating

department policy involving racism and participating with extremist groups. Id.; see also Forte v. Jones, 2013 U.S. Dist. LEXIS 39113, *15 (E.D. Cal. Mar. 19, 2013) ("[I]t is the allegation of membership in the Ku Klux Klan that is actionable; the allegation that a person is a 'racist,' on the other hand is not actionable because the term 'racist' has no factually-verifiable meaning."). Dyer's assertion of racism, when viewed in this specific factual context, "is not merely a hyperbolic characterization of [Plaintiff's] black corporate heart—it represents an accusation of concrete, wrongful conduct." Overhill Farms, 190 Cal. App. 4th at 1262.  Thus, Defendants' contention that Dyer's statement can only be categorized as a nonprovable opinion as to racism is unavailing.

        In conclusion, the totality of the circumstances shows that a reasonable viewer could understand Dyer's statement as implying an assertion of fact.[6] The "natural and probable effect" Dyer's statement would have on the "mind of the average reader" is that the statement could at least be construed as either fact or opinion, thereby making the issue improper for resolution at the motion-to-dismiss stage. Rodriguez, 314 F.3d at 985-86; see also Cleveland v. Ludwig Inst. for Cancer Research Ltd., 2020 U.S. Dist. LEXIS 106050, *39 (S.D. Cal. June 17, 2020) (denying motion to dismiss libel claim because plaintiff sufficiently alleged implication of fact in defendant's statement that plaintiff's branch was terminated due to its subpar impact and production); Moser v. Encore Capital Grp., 2006 U.S. Dist. LEXIS 109142, *31 (S.D. Cal. May 1, 2006) (holding that plaintiff sufficiently alleged implication of provably false fact in defendant's libelous statement that "[plaintiff] was placed on administrative leave and his employment was terminated as of July 31, 2001"); Thompson v. Civil, 2020 U.S. Dist. LEXIS 45618, *8-9 (C.D. Cal. Jan. 21, 2020) (denying motion to dismiss libel claim because plaintiff sufficiently alleged a provably false factual assertion in defendant's statement that plaintiff was fired for violating company's nondisclosure policy). Accordingly, Defendants' motion to dismiss the Complaint's sixth cause of action is denied.

---

[6] The Court's decision does not mean that the implied factual assertions in Dyer's statement are false but rather that they are capable of being proved false. Whether the implied factual assertions are true or false can be determined in discovery. Currently at the motion to dismiss stage, Plaintiff has sufficiently alleged facts, which the Court must accept as true and construe in the light most favorable to Plaintiff, see Mollett, 795 F.3d at 1065, that Dyer's statements were "separately and individually false." See Doc. No. 1 at 24, ¶ 71.

**B. Deprivation of Liberty Without Due Process Claim**

*Defendants' Arguments*

Defendants move to dismiss Plaintiff's seventh cause of action for violation of the Fourteenth Amendment's protection against the deprivation of a property interest without due process. Doc. No. 6-1 at 15-16. Defendants argue that this cause of action does not sufficiently state a claim because Plaintiff failed to request a "name-clearing" hearing, Plaintiff was afforded an opportunity for a post-termination "name-clearing" hearing, and there are insufficient allegations that Defendants caused Plaintiff's injuries.

*Plaintiff's Arguments*

Plaintiff contends that his seventh cause of action is premised on allegations that as part of his termination, Plaintiff was stigmatized as a racist without due process, thereby foreclosing his liberty to continue in his occupation as a police office. With respect to Defendants' stated grounds for dismissal, Plaintiff argues that he was not required to request a name-clearing hearing, Plaintiff was denied both a pre-termination hearing and an adequate post-termination hearing, and the Complaint sufficiently alleges that Defendants caused Plaintiff's injury by stigmatizing and confirming him to be a racist as part of his termination.

*Legal Standard*

In order to state a cognizable procedural due process claim in a § 1983 action, the plaintiff must establish: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process." Shanks v. Dressel, 540 F.3d 1082, 1090 (9th Cir. 2008) (citing Portman v. Cty. of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993)). In cases where a public employee is "terminated for reasons 'sufficiently serious to stigmatize or otherwise burden the individual so that he is not able to take advantage of other employment opportunities,' and the public employer publicizes those stigmatizing charges," the "process" that must be afforded to the employee is a "name-clearing" hearing. Perez v. City of Roseville, 926 F.3d 511, 523 (9th Cir. 2019); Evans v. Hous. Auth. of Benicia, 2007 U.S. Dist. LEXIS 94299, *21 (E.D. Cal. Dec. 10, 2007). Due process imposes no hard and fast requirements on this "name-clearing" hearing, including, for example, whether it must be public, evidentiary in nature, or held prior to

17

deprivation of the liberty or property interest. Moody v. Cty. of Santa Clara, 2018 U.S. Dist. LEXIS 16329, *19 (N.D. Cal. Jan. 30, 2018) (citing Shinault v. Hawks, 782 F.3d 1053, 1057 (9th Cir. 2015)). The due process can take place through "a combination of pre- and post-deprivation procedures, or be satisfied with post-deprivation process alone." Macias v. Filippini, 2018 U.S. Dist. LEXIS 83574, at *23 (E.D. Cal. May 17, 2018) (quoting Buckingham v. Sec'y of the USDA, 603 F.3d 1073, 1082 (9th Cir. 2010) (citations omitted)); see also Jones v. City of Modesto, 408 F. Supp. 2d 935, 954 (E.D. Cal. 2005) ("[W]here there is no practical way to provide a pre-deprivation hearing, a post-deprivation hearing provided at a meaningful time and in a meaningful manner will suffice to satisfy the requirements of due process."). For claims alleging damage to reputation in connection with termination of employment, courts in the Ninth Circuit have found a post-deprivation name-clearing hearing to be sufficient due process. See Myers v. Rio Linda/Elverta Cmty. Water Dist., 2012 U.S. Dist. LEXIS 54732, *12-13 (E.D. Cal. Apr. 17, 2012) ("[A] post-deprivation name-clearing hearing is sufficient for claims alleging damage to reputation"); Evans, 2007 U.S. Dist. LEXIS 94299, at *22 (a post-termination name-clearing hearing is sufficient due process to refute stigmatizing charge).

*Discussion*

The Court finds that the Complaint does not state a cognizable due process claim because it appears that Plaintiff was afforded an adequate post-termination name-clearing hearing. It is undisputed that the City proceeded with Plaintiff's termination pursuant to Fresno Municipal Code Section 3-280(d), which permitted the appointing authority to take immediate disciplinary action when necessary. As part of this disciplinary action, it appears that Plaintiff was provided an opportunity to appeal his termination by (1) filing an appeal before the Civil Service Board, (2) requesting a hearing before a hearing officer who would then make a recommendation to the Civil Service Board, or (3) filing for binding arbitration. Doc. No. 6-2 at Exs. A-E. It is undisputed that Plaintiff opted to request a hearing before a hearing officer pursuant to Fresno Municipal Code Section 3-283 and his labor agreement with the City. See Doc. No. 6-2 at Exs. D and E. While Plaintiff contends that this post-termination hearing was inadequate because "neither the hearing officer or the Civil Service Board had the ability to grant complete relief since their power were

limited to affirming, modifying, conditioning or revoking the order to terminate," Doc. No. 7 at 16:12-15, Plaintiff does not sufficiently explain why the power to "affirm, modify, condition, or revoke" the order to terminate excludes the power to provide him an opportunity to clear his name and damages for lost income, emotional distress, backpay, and nominal damages. Additionally, Plaintiff does not address why his opportunity to pursue post-termination arbitration was inadequate due process. See Mustafa v. Clark Cty. Sch. Dist., 157 F.3d 1169, 1179 (9th Cir. 1998) (holding that post-termination arbitration procedures were sufficient due process for tenured government employee).

Because it appears that Plaintiff had opportunities for a post-termination hearing or arbitration, Defendants' motion to dismiss Plaintiff's seventh cause of action will be granted.[7] See Myers, 2012 U.S. Dist. LEXIS 54732, *12-13 (granting motion to dismiss procedural due process claim because Complaint did not allege that plaintiff was denied a post-deprivation name-clearing hearing but rather acknowledged that plaintiff was currently in the process of pursuing her administrative remedies); Evans, 2007 U.S. Dist. LEXIS 94299, at *22 (holding that Plaintiff failed to state a cognizable due process claim in part because he was provided an opportunity to "clear his name" after his termination).  Because it is not necessarily clear that amendment would be futile, dismissal will be with leave to amend.  See Myers, 2012 U.S. Dist. LEXIS 54732, *13 (providing plaintiff an opportunity to amend and requiring plaintiff to specifically identify "why the process provided was inadequate").

---

[7] The Court need not address the issue of whether Plaintiff's procedural due process claim is barred on the ground that Plaintiff did not request a name-clearing hearing. The majority of federal circuits addressing this question have determined a plaintiff is required to request a name-clearing hearing prior to filing a deprivation of liberty interest claim. See Winskowski v. City of Stephen, 442 F.3d 1107, 1110 (8th Cir. 2006); Quinn v. Shirey, 293 F.3d 315, 322 (6th Cir. 2002); Gillum v. City of Kerrville, 3 F.3d 117, 121 (5th Cir. 1993). However, neither the Supreme Court nor the Ninth Circuit have required plaintiffs to do so, and the district courts within the Ninth Circuit are almost evenly split on this issue. See Howard v. Contra Costa Cty., 2014 U.S. Dist. LEXIS 26908, at *38-39 (N.D. Cal. Feb. 28, 2014) (recognizing conflict and collecting cases); Caraway v. Town of Columbus, 2018 U.S. Dist. LEXIS 54770, *22-23 (D. Mont. Mar. 30, 2018) (same). In light of the Court's holding that Plaintiff appears to have been afforded adequate process through a post-deprivation hearing, the Court need not address this issue, nor the issue of causation, at this time.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss and to strike portions of the Complaint (Doc. No. 6) is GRANTED in part and DENIED in part as follows:

   a. Defendants' motion to strike all references to the Fifth Amendment in the first, second, third, and seventh causes of action is GRANTED;

   b. Defendants' motion to dismiss all official capacity claims against the individual Defendants is granted without leave to amend;

   c. Defendants' motion to dismiss the Complaint's first cause of action is granted without leave to amend;

   d. Defendants' motion to dismiss the Complaint's sixth cause of action is denied.

   e. Defendants' motion to dismiss the Complaint's seventh cause of action is granted with leave to amend;

2. Plaintiff may file an amended complaint that is consistent with this order no later than twenty-one (21) days from service of this order;

3. If Plaintiff files an amended complaint, Defendants shall file a response within twenty-one (21) days of service of the amended complaint; and

4. The failure of Plaintiff to file a timely amended complaint will result in the withdrawal of leave to amend without further notice, and Defendants shall file an answer within twenty-eight (28) days of service of this order.

IT IS SO ORDERED.

Dated:  April 21, 2022                           _____
                                                  SENIOR DISTRICT JUDGE